Ex Parte Smith et al.

Appeal from the District Court of San Juan.

No. 240.—Decided June 24, 1908.

Hereditary Rights.—Illegitimate Intestate Succession—Right of Refresentation—Law Applicable to the Case.—The hereditary rights of a grandchild to inherit by right of representation from his paternal grandfather, are governed by the laws in force at the time of the death of his grandfather whose estate is to be distributed and not by the laws in force at the death of the father.

THE RIGHT OF REPRESENTATION—MEANING THEREOF.—A grandchild who inherits by representation does so as a descendant, and representation must be taken into account only for the purpose of taking a share equal to that which the person whom he represents would have received.

HEREDITARY RIGHTS—INTESTATE SUCCESSION—REVISED CIVIL CODE—ACKNOWLEDGED ILLEGITIMATE CHILDREN AND THEIR DESCENDANTS.—Our Revised Civil Code, in treating of intestate successions, places the natural family on the same footing with the legitimate family, granting illegitimate acknowledged children and their descendants the same rights as those conferred upon legitimate children and their descendants.

ID.—INTESTATE SUCCESSION—STATUTORY CONSTRUCTION.—The Act of March 9, 1905, relating to heirs by force of law refers only to the intestate succession and contains no provision whatever in derrogation or modification of sections 905 and 913 of the Revised Civil Code.

ID.—ILLEGITIMATE INTESTATE SUCCESSION—SECTION 905 OF THE REVISED CIVIL CODE.—Section 905 of our Revised Civil Code is not a reproduction of section 931 of the Spanish Civil Code, but these sections are based on different principles.

ID.—ILLEGITIMATE INTESTATE SUCCESSION—ILLEGITIMATE GRANDCHILD.—In accordance with the provisions of our Revised Civil Code in force July 29, 1906, an acknowledged natural grandchild has a right to inherit by right of representation of his natural grandfather.

The facts are stated in the opinion.

*Mr. Benítez Castaño* for appellant.

*Mr. Bosch* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

Guillermo Smith Delgado, represented by his natural mother, Paula Delgado, filed a petition in the District Court of San Juan to have him and his aunt, Cristina Smith, both declared to be the intestate heirs in equal shares of Guillermo Smith Plain, to which end she alleged that Guillermo Smith Plain had died in Santurce on the 30th of July of the said year, unmarried; that said Smith Plain had two acknowledged natural children named Andres Avelino and Cristina Smith; that Andres Avelino had died on July 31, 1897, leaving one acknowledged natural child, named Guillermo Smith Delgado—that is to say, the petitioner—and that the latter and Cristina Smith were, therefore, the only heirs in equal shares of Guillermo Smith Plain.

On May 22, 1907, Cristina Marta Smith also applied to said court in separate proceedings, requesting that she be declared

the sole intestate heir of Guillermo Smith Plain and alleging that inasmuch as Andres Avelino Smith had died eight years before his father Guillermo Smith Plain, without leaving a will and without legitimate descendants, the bastard succession of Andres Avelino Smith had no right to succeed the deceased grandfather by representation.

While the decision in both proceedings was pending, the lower court, by order of November 30, 1907, taking into consideration that there was no dispute upon the facts, but merely upon the law applicable thereto, directed that these proceedings be consolidated so as to render final judgment in due time, determining the rights of the parties.

On the 30th of said month of November, the court rendered a written opinion which reads as follows:

"On July 29, 1906, Guillermo Smith Plain died in Santurce, a *barrio* of this city, without having made any testamentary disposition, leaving as his only relatives Cristina Marta Smith, a natural daughter, so declared by judgment of this district court, and also Guillermo Smith Delgado, a natural grandson, being a natural child, legally recognized in his record of birth in the civil registry, of Andres Avelino Smith, who in his turn had been declared by judgment a natural son of Guillermo Smith Plain, whose succession is now under consideration.

"Andres Avelino Smith died on July 30, 1897—that is to say, nine years before his father.

"The natural grandson prays that he be declared, in representation of his natural father, Andres Avelino Smith, the heir of his natural grandfather, in union with his aunt, Cristina Marta Smith, who, in the proceedings which have been consolidated, prays for such declaration in her favor exclusively, she denying any hereditary rights on the part of the natural grandson, in the estate of his natural grandfather.

"The parties have discussed at length in their briefs the point as to what legislation was applicable to the present case, with respect to the hereditary rights of the grandson, whether that in force in 1897, when Andres Avelino died, or that in force at the time of the death of Guillermo Smith Plain (1906), it being alleged that if he has any hereditary title, it is not in his own right, but as the repre-

sentative of his father, and that as the laws of 1897 granted the right of representation only to the legitimate descendants of a natural child, Guillérmo Smith Delgado cannot now invoke a right which he did not have at the time of the death of his father.

"The right to succeed to an estate arises from the fact of the death of the person whose succession is involved, and, therefore, we understand that the death of Guillermo Smith Plain in 1906, regulates such rights, as certain persons may have to enjoy his property. And consequently also, that the right to enter upon said estate by representation of another person must be governed by such fact and not by the death of the person represented.

"We are supported in this opinion by the fact that the grandson, who is called to the inheritance, is so called in his capacity as such descendant, and only the representation must be taken into account for the purpose of apportioning a share equal to that which would have been apportioned to the person he represents, and not in any other capacity, such being the object of the right of representation as governed by our present and former laws. So it was also understood and applied by the Supreme Court of Spain, which in its opinion of June 25, 1905, held 'that the right of representation granted by the law to descendants when they appear as heirs in conjunction with other collateral relatives, does not signify that the purpose of said representation is to ascribe to the inheritance in question the condition of inheritance of the person represented, but solely to determine the basis of the rights of the representatives with reference to the person from whom the inheritance is derived, article 926 of the Civil Code explaining the real meaning and *only* scope of such right, which article, in harmony with the legislation formerly in force, marks its characteristic quality in the division of the inheritance *per stirpes*, so that the representative does not inherit more than that which the person he represents would have inherited had he lived or had he been able to inherit.'

"In this sense it may be said that children, even while representing the person of the father, exercise rights of their own.

"From the foregoing it appears that the rights of Guillermo Smith Delgado to the estate of his natural grandfather, must be governed by the laws in force at the time of the latter's death, even though the grandson cannot, under the right of representation, acquire more than that which his father would have been entitled to had he lived, such laws in force being the revised Civil Code published in 1902, and amendments thereto in this respect, if any, that have been made until July, 1906.

"For the purpose of considering the question from this point of view, we must call attention to the fact that the revised Civil Code introduced a notable change with respect to the rights of illegitimate children, and also that the rights are different when a person dies testate or intestate.

"The revised Civil Code of 1902, which made such change, was later amended somewhat by the Act of March 9, 1905, with respect to the rights of natural children, returning to the principles under which they were developed in the former Civil Code, but this was only with reference to testate successions and not to intestate successions, which has not been amended, and the case at bar is one of a succession without a will. That such is the case is shown by the fact that all the sections of the Revised Civil Code which were amended—that is, from 795 to 824—refer to testate successions while sections 905 and 913 are not repealed, and although it is a fact that after said sections the act contains sections 12 to 19, the latter also refer to testate succession; this is supported by the fact that while formerly the legitimate children and descendants and the acknowledged illegitimate children were considered as heirs by force of law, without distinction, this provision was later amended, the natural children being assigned to a third place in the manner and extent set forth in sections 8 to 16 and section 20, which affected the legal portion present only in testate successions of the illegitimate children who can be considered only with reference to an intestate succession.

"In applying, therefore, the provisions relating to intestate successions, as contained in the Revised Civil Code, we find that section 904 after providing that an intestate succession pertains, in the first place, to the descending direct line, section 905 provided as follows:

"Section 905.—Legitimáte and acknowleged illegitimate children and their *issue* succeed to their fathers and *other* ancestors, without distinction of sex or age, and even though they proceed from different marriages."

"And section 913 adds:

"Acknowledged illegitimate children and their *issue* shall have the same rights of inheritance as lawful children and their issue, and in the form provided in the preceding sections both to inherit in their own right and by the right of representation.

"Parents with respect to the acknowledged illegitimate child and his issue shall have the same rights of inheritance as lawful parents in case of the intestacy of their children and lawful issue.

"So that according to section 905, acknowledged illegitimate children and their issue, without stating whether the latter are to be only

the legitimate or also the acknowledged illegitimate descendants, succeed their parents and other ascendants. Therefore, this section makes no distinction between the classes of legitimaté and that of illegitimate descendants to inherit from the parents and ascendants, or grandparents, nor does section 913 make such distinction in providing that the descendants of illegitimate children shall have the same hereditary rights as the legitimate children; such distinction is also absent in its last paragraph in providing that with respect to illegitimate children and their issue, the parents and grandparents shall have the same rights as if legitimate children and descendants were involved.

"It cannot be alleged therefore that the legislator was neglectful in not stating that he referred to legitimate descendants, because he has expressed the same idea in a number of sections; and if the law does not make such distinction between legitimate and illegitimate descendants, are we authorized to make it? Let us remember the principle of law that: *'Ubi Lex Non Distinguit Nec Nos Disinguere Debemus.'*

"On the other hand the only thing which would permit of a construction contrary to the text of the law is that in a testate succession only the legitimate descendants have the right to inherit by representation, in accordance with the provisions of section 17 of the Act of March 9, 1905, which is a reproduction of article 843 of the former Code. In a different form, this question might be propounded in the following terms: If a testate succession grants in a specific manner hereditary rights by representation only to a legitimate descendant and denies it to an illegitimate descendant, who should the latter acquire by intestate succession rights which he would not have had if his ascendant had made a will and left him nothing?

"Indeed this is an argument which has set us to thinking, because it shows a contradiction on the part of the legislator. The Spanish Civil Code raises the same question in articles 843 and 941 and it has not been settled by the Supreme Court of said country, or had not at least down to 1906.

"Foreign legislation, such as that of Mexico and Italy, decided this question in the Codes, distinctly providing that only legitimate descendants had such right of representation, while that of Guatemala provided the contrary. In France both opinions have been sustained by noteworthy authors; and in Spain Mr. Martínez Ruiz holds that although the Code does not make any distinction between descendants in intestate successions, legitimate descendants must be understood, because in testate successions they alone have such rights,

while Mucius Scevola, in volume 16 of his works, maintains the opposite opinion.

"We believe that under our present legislation this question is less susceptible of discussion, because it is not one article alone, as in the Spanish Code, which raises this question, but, as we have already said, our Code on two or three occasions, referring to these rights, mentions descendants without making any distinction between them, and, therefore, that which has been determined in a general manner cannot be attributed to neglect or failure to classify or determine.

"On the other hand, it is a rule of construction that where the law speaks generally and without making any distinction, no exceptions can be made which, as such, must appear in an express and unquestionable manner, and such an exception would be the power to introduce the qualification of a legal portion, where the law has omitted to mention it.

"It is true that the testate succession qualified the descendants by restricting the hereditary rights of representation to legitimate descendants, but this disparity of opinion between it and intestate succession may find its explanation in the fact that although the order of succession is based on the presumption of affection in both one and the other succession, in the testate succession the grandparent may favor his illegitimate descendants with the third part of his estate, of which he has the free disposition, while in intestate succession if the law did not provide for the illegitimate descendants, they would be left without any representation in the inheritance.

"Furthermore, if in accordance with the last paragraph of section 913 of our Code, grandparents will inherit from their descendants, with no distinction either between the legitimate and the illegitimate, what reason is there for the latter not to inherit in their turn from the grandparents, as a matter of reciprocity?

"If the word descendants as employed in section 905 were construed in a restrictive sense in favor of legitimate descendants alone, such restriction would also have to be applied to sections two and three of Chapter III, title three, of the Civil Code in force.

"With regard to Cristina Marta Smith, as she is an acknowledged natural daughter of Guillermo Smith Plain, her right to inherit from him is indisputable.

"The parties are entitled to judgment in accordance with this opinion.

"San Juan, P. R., November 30, 1907. (Signed) Pedro de Aldrey, Judge of the First Section."

In pursuance of the opinion transcribed, the following judgment was rendered:

'Guillermo Smith Delgado and Cristina Marta Smith, *ex parte.* Joined sections. Nos. 960 and 1531. *In re* the declaration of heirs of Guillermo Smith Plain. Judgment. Whereas Guillermo Smith Plain died in *barrio* Santurce, San Juan, P. R., on the 29th of July, 1906, without his having made any testamentary disposition, and leaving as his only relatives his daughter Cristina Marta Smith and his grandson, Guillermo Smith Delgado, according to the sworn petition filed; and

"*Whereas,* from the testimony of the witnesses and the documentary evidence, it appears that the death occurred on the date mentioned, and that his only descendants are Cristina Marta Smith, his natural daughter, declared to be such by jugdment, and Guillermo Smith Delgado, the legally acknowledged natural son of Andres Avelino Smith, who died in 1897, and who was in turn the natural son of Guillermo Smith Plain; and

"*Whereas,* the inheritance must be divided in equal parts between Cristina Marta Smith and Guillermo Delgado, who represents the rights of his deceased father, Andres Avelino Smith;

"*Therefore,* the court must declare, and does declare, that the intestate heirs of Guillermo Smith Plain are his acknowledged daughter, Cristina Marta Smith, with right to one-half of his estate, and his natural grandson, Guillermo Smith Delgado, entitled to the other half, in representation of his father, Andres Avelino Smith, without any special taxation of costs in these proceedings.

"Pronounced in open court this 30th day of November, 1907. Entered this 6th day of December, 1907, instead of the second of the same month and year on which it should have been entered. Pedro de Aldrey, Judge, José E. Figueras, Secretary. By A. Marin Marien, Deputy Secretary."

Counsel for Cristina Marta Smith took an appeal from this judgment on the 18th of said month of December, which appeal is now awaiting the decision of this Supreme Court, after having heard the briefs and oral arguments of both parties.

The appellant maintains that Cristina Maria Smith is the only heir of Guillermo Smith Plain inasmuch as the bastard

succession of a natural child has no right to inherit from his deceased grandfather, either under the Civil Code in force at the time of the death of Andres Avelino Smith, which he alleges is applicable to the case, or under the law in force at the time of the death of Guillermo Smith Plain.

We agree with the learned opinion of the lower court that the rights of Guillermo Smith Delgado to the inheritance of his natural grandfather must be governed by the laws in force at the time of the death of the latter, and that such laws are those comprised in the Revised Civil Code published in 1902, which has not been modified by the Act of March 9, 1905, in that part relating to intestate successions.

We accept the convincing reasoning of said court on this point, and arrive at the conclusion established as a legal precept by the sixth transitory provision of the revised Civil Code, which reads:

"The rights to the inheritance of him who has died with or without a will before this Revised Civil Code goes into effect, shall be governed by the previous legislation; the inheritance of those dying afterwards with or without a will, shall be settled and partitioned in accordance with this Revised Civil Code, but carrying out testamentary provisions in so far as this Code permits."

If Guillermo Smith Plain died on July 30, 1906, his inheritance must be settled and divided in accordance with the provisions of the revised Civil Code in force at that time, which, we repeat, was not modified with respect to intestate successions, by the Act of March 9, 1905.

As the rights of succession of Guillermo Smith Delgado with relation to his grandfather must be governed by the provisions of the Revised Civil Code, it is necessary to acknowledge in Guillermo Smith Delgado the right he claims to succeed Guillermo Smith Plain, and which with abundant reason the San Juan court recognizes in him.

Section 905 of the Civil Code now in force, transcribed in the opinion of the judge below, amended section 931 of the Spanish Code, which reads as follows:

"Legitimate children and their descendants succeed the parents and other ascendants, without distinction of sex or age, even though they spring from different marriages."

As will be observed, the Spanish Civil Code granted privileges and preferences to the legitimate family over the natural family, while our Code, in treating of intestate successions, places the natural family on the same footing with the legitimate family, by granting the acknowledged illegitimate children and their descendants the same rights as legitimate children and their descendants, being thus guided solely by the law of nature and confining itself to the ties of blood.

Sections 904, 907 and 908 of the said Revised Code do not establish any difference whatsoever between legitimate and acknowledged illegitimate descendants, and the general provisions thereof confirm us in our idea that in intestate successions the legitimate descendants enjoy no privilege over the acknowledged illegitimate descendants, all of them being equal before the law.

The same principle must have inspired the first and second paragraphs of section 913 of the said Code, which places acknowledged natural children and their descendants on the same footing with legitimate children, while we do not find in its other provisions, nor in the Act of March 9, 1905, which either amended or repealed sections 795, 796, 797, 801, 811, 812, 815, 821, 822, 823 and 824 of said Civil Code, all of which sections relate to succession, any provisions whatsoever repealing or amending sections 905 and 913, relative to intestate succession, which is involved in this case.

It is not strange that learned commentators of the Spanish Civil Code are of the opinion, with relation to article 931 thereof, that the descendants to which said article refers, are

the legitimate ones and no others, for as we have stated, that article and section 905 of our Code are inspired by different principles. The construction of such commentators may be good, as we hold to be good that given to section 905 of our Code, which is not a reproduction of article 931 of the Spanish Civil Code. If it were, we might perhaps accept the opinion of those commentators.

It is idle to consider the sections of the Civil Code which relate to maintenance between relatives, because the provisions on the subject contained in Title VIII, Book I, of said Code, bear no relation to the provisions relating to successions, embodied in Title III, Book III of said Code.

Nor can we discuss in this appeal whether Andres Avelino Smith, the father of the petitioner, Guillermo Smith Delgado, could or could not have been declared a natural child of Guillermo Smith Plain, as this juridicial question is entirely foreign to these proceedings which involve only the declaration of heirs applied for by Cristina Marta Smith and Guillermo Smith Delgado.

For the reasons stated, the judgment appealed from should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justices Figueras, MacLeary and Wolf concurred.